Alright, our next case for argument this morning is Paul v. Berryhill. Mr. Rana. Thank you, your honor. May it please the court. This is a social security case, so we're shifting gears a little bit. Here the ALJ made two errors, and within the first error, there are actually a couple of sub-errors, if you want to call them that. First of all, the ALJ improperly evaluated the opinions of a psychologist who evaluated Ms. Paul at the request of the agency. They did so by, first of all, not evaluating some of the opinions, and secondly by giving improper reasons for rejecting the opinions that were evaluated. And then secondly, the ALJ failed to totally account for Ms. Paul's moderate difficulties with concentration, persistence, and pace, or pace, both in the residual functional capacity assessment and in the hypothetical question to the vocational expert. On the first set of errors, in Ms. Paul, one of her severe impairments, as found for her by the ALJ, is schizoaffective disorder, or she has schizophrenia. She was sent by the agency to an evaluation by a Dr. Leah Powell, who is a psychologist. Dr. Powell did an evaluation, did a thorough examination, wrote a thorough report that starts at page 286 of the record, goes through 291, and on page 291 of the record came up with several opinions. In the decision by the ALJ, the ALJ evaluated some of those opinions, but not all of them. The regulations require, in a social security case, that the ALJ evaluate every medical opinion. The ALJ did some of them, evaluated some of them, but not all of them. So what's helpful to me, given the standard of review, is to really focus on what sorts of things are appropriate for this court to take some step about, and what things are really simply just disagreements with the ALJ's evaluation of a record as a whole. So as I understand it, your first big point is that the ALJ had a responsibility to respond to all of these limitations from Dr. Powell, not just some. That's correct. Yeah, it's not for this court, obviously, to weigh, or even for the district court, to weigh evidence. But it is the job of this court to say the ALJ, as a matter of law, failed to fulfill his duties as set forth in the regulations. One of those duties is to evaluate every medical opinion in the file. Is your argument that the ALJ failed to evaluate all of the opinions, or that the ALJ erred in giving little weight to Dr. Powell's opinion without a sufficient explanation? It's both, and that's why there's kind of the two issues in one on the first issue here. Because... So she's entitled to give whatever weight she wants to Dr. Powell's opinion, but not to do so without an explanation. Right. The ALJ, as a gentleman in this case, he has to evaluate every medical opinion in Dr. Powell's report. Not every sentence. Nobody's saying that the ALJ should have gone through sentence by sentence. But every medical opinion has to be evaluated. The ALJ evaluated some of them, but didn't evaluate some of the others. And then the opinions that he did evaluate, he gave four reasons, and none of them is a valid reason. So you're saying that it's okay for the ALJ to, maybe in a hypothetical case, it's okay for the ALJ to say, I'm discounting this examiner's opinion, but if the reason the ALJ gives is because the examiner saw the person only one time, and then the ALJ gives higher weight to somebody who never saw the person, that that's just internally inconsistent. Exactly. Yeah, there were... I mean, it's just a bad reason. Maybe there'd be some other reason. What about reliance on the patient's self-reports? You see this actually through a lot of these cases with mental status examinations. And I think the court, and I can't give you the name of the case off the top of my head, but I think this court has recognized that in the area of psychological evaluation, that much of that does rely on self-reports. It has to. We can't x-ray a person's psyche. You can take MRIs of the brain, but that doesn't show what we're talking about here. So you have to rely to a great extent on self-reports. Yeah, so I guess for the first sub-issue of the first issue, there were simply opinions that the ALJ did not evaluate, and that's legal error, and they were material in this instance. As to the reasons that he gave for giving little weight to the opinions that he did evaluate, one was the one that you mentioned, Judge Wood, that it just doesn't make sense to give less weight to somebody who's evaluated somebody once, as opposed to, and then give more weight to somebody who hasn't evaluated them at all. Now, am I remembering correctly? We have all these Social Security cases today, so I apologize for confusing the records. I thought that this was also an instance let's see in which the ALJ is I suppose looking at the non-examining people and saying they have a more complete record, but did the ALJ say that, or is that the Commissioner? Do we have a Chenery issue? Is that the Commissioner saying? No, I don't think there's any Chenery issue. Okay, fine. The other reasons, one of the factual things was that she didn't attend her therapy sessions regularly, and that does show something It shows something if you're evaluating her credibility, but even if, and that's not the issue here, even if it were the judge then has a responsibility under the regulations to say why wasn't it that you were attending therapy? What happens here? The ALJ draws the inference that things couldn't have been that bad, but the other inference would be that this is a mentally disturbed person who doesn't follow up well. True. And you're saying the ALJ never probed to see which explanation or perhaps a third explanation was the correct one. And the ALJ used the sporadic attendance at mental health therapy to discredit the opinion of the psychologist who was evaluating Ms. Paul at the request of the agency. It just doesn't seem to be a logical connection there. Not to address Ms. Paul's credibility. Exactly. Exactly. There are, the judge a couple other reasons that he gave for not, for only giving little weight was that the opinions were vague and non-specific. There again, there's a definite regulation, 20 CFR 416.919P open paren B, close paren, that says if the medical report is inadequate or incomplete, ALJ, you have to contact the evaluator. Is that especially true if it's an agency evaluator? Yes, it's an agency evaluator. So you're almost out of time, I just wanted to hear what you had to say about the hypothetical, because obviously if it's a good hypothetical then you can rely on what the vocational expert said, but garbage in, garbage out if it's a bad one. Right, and the ALJ's analysis of Dr. Powell's opinion so it's flawed in that respect. It's also flawed in that after finding moderate difficulties with concentration, persistence or pace, the ALJ said you have to fully account for that in the hypothetical and in the RFC assessment and the ALJ said we're going to limit this person to flexible pace Well, flexible pace by itself doesn't really get you anywhere that tells you nothing and then the ALJ defined flexible pace as saying free of production rate pace. Well, what does that mean? In Varga, this court said free of production rate pace is too vague to be helpful and so I think free of production rate pace is equally as vague as free of fast pace reduction and I would suggest that because of Varga Varga controls obviously and this hypothetical question is equally vague. Okay, I think your time is about up, so thank you. Thank you very much. Ms. Schock Good morning. May it please the court My name is Meredith Schock and I represent the Acting Commissioner of Social Security The ALJ here provided specific and legally sound reasons for his determination that Dr. Powell's opinion was entitled to little weight That determination and the ALJ's residual functional capacity finding were both supported by substantial evidence and therefore we ask the court to affirm the decision. I don't understand the one time visit reason because it seems to me that would apply to the entire universe of agency examining professionals whether it's a psychologist, whether it's a rheumatologist, whether it's any other ologist The nature of this is that they're not treating physicians or healthcare providers. They have been given this person for a one time event So it's a giant waste of time They're all incompetent Well I disagree your honor that it's a giant waste of time or that the factor applies equally The factor one time visit applies to every single one of them because that's the nature of the relationship If the ALJ had dug in and I have some problems with the ALJ's description of the activities of daily living, this court has complained about that before as well as the RFC I just don't see any reason even to mention the fact that it's a one time visit and why you would take somebody who sits down and reads the file over someone who's actually sat down, talked to the person recorded things that are capable of and indeed were corroborated in this record whether it's visits to other healthcare providers for things, whether it's how capable the person is socially, racing thoughts sleep disturbances, impulsive behaviors We can see external evidence of all of that Your honor, the consideration of the relationship between the physician or psychologist providing the opinion and the claimant is designated in the regulations as a relevant factor. This court has upheld that on many occasions But when you phrase it that way though, I don't have any problem with it because the ALJ might say this is a treating physician who's seen this person for the last 15 years. I'm a little worried about objectivity. The ALJ might say this is a one time stranger agency consultant. No reason to worry about advocacy or anything. This person has no incentive to do anything but give an honest report to the agency if they want further evidence or this person never laid eyes on the individual and we're talking about psychological conditions that might not be visible from a piece of paper. So sure, the ALJ can look and see what's the nature of the relationship, but I'm not sure that privileging the piece of paper over somebody who actually saw the person without some explanation makes the slightest bit of sense It can't be that you saw the person one time and I saw the person zero times and therefore my observations are better Well that's certainly not what the ALJ said here, Your Honor. It is not what the ALJ meant by saying you're a one time examiner. It's not what the ALJ meant. The ALJ evaluated the opinions separately. He looked at the merits of each medical opinion on its own. But how can you reconcile the ALJ's comment and say that's not what he did here when he gave the agency examining doctor who examined her once less weight and one of the reasons he gave was this examining doctor only saw her once. But then he gave great weight to Dr. Pressner's opinions when he never saw her. There seems to be an inherent conflict with that There is no conflict there, Your Honor, because the ALJ assessed Dr. Pressner and Dr. Klatter's opinions on the merits of those opinions. He assessed But one of the factors was for discounting. I would understand that if the ALJ hadn't said up front he's discounting on one of the basis she only saw him once And she provided, Dr. Powell provided a vague and based on a one time evaluation. But I don't know what's so vague about it. We looked at Dr. Powell's opinion and actually one of the things that bothers me about some of these cases is if Dr. Powell had gone any further in the direction of discussing what kind of work Ms. Paul could do, the agency would have pounced back with the statement that evaluation of work capabilities is not for the doctor it's an issue reserved for the ALJ. They've been very punitive about statements like that. Your Honor, I disagree with that. Oh, it happens all the time. I've seen this statement in millions of cases. No, I certainly agree with Your Honor that if the doctor said, as Ms. Powell did, these prevent her from working, then the ALJ would not be required to give any deference on that point because it's not a medical opinion. However, if Ms. Powell had offered specific limitations, you know, she can only concentrate for this long. She can only do these types of tasks. Certainly that would be a proper opinion from a medical provider if she had a basis for it. That's not what she said. In fact, it's not even what she observed. She observed that Ms. Paul had no distractibility during the examination. Well, that's not quite right. In behavioral observation, she's on time for the interview, oriented to person, place, and event. Mood is tense. Affect congruent with mood. Eye contact okay. Cooperative attitude, but fast speech, thought processes, her discussion of her behavior and decision-making skills were often illogical. No evidence of distractibility, but some evidence of psychomotor agitation. She has to stand because of the back pain. And the ALJ discussed those. It's a back and forth and she does very poorly on, you know, she can't do serial sevens basically at all. I don't know if that's what the report says, Your Honor. She had difficulty with that. She submitted the serial sevens and she missed five answers as she often subtracted the number six instead of the number seven. That to me is she can't do serial sevens. And she had no problem with other arithmetic. She answered all of the other questions, many of the other questions correctly. Answered judgment questions correctly. The ALJ certainly did not say that she has no limitations. The ALJ considered the limitations that Dr. Powell observed in her report and reported in her report and the ALJ accommodated many of those. One of the things that concerns me is the last line or two lines. She is impulsive, has difficulty in making good decisions, has difficulty controlling her own behavior. These are indicated with work related activities. That goes the other way, right? That's a very strong statement by Dr. Powell that seems to me more severe than the findings of her report. The ALJ, that is the part that the ALJ said, I give that little weight. But the ALJ is completely disregarding the history that Dr. Powell takes and the ALJ is not entitled in these mental areas. It's not like you broke your leg and everybody can see that the bone is in the wrong position. She has a significant history of very compromised behavior, I guess I'll say. Daily panic attacks, the racing thoughts, the mood swings, difficult with her children, needs help, episodes of tearfulness, hallucinations, self-mutilation. She's got scars all over herself. The self-mutilation is easily enough observed. Your Honor, first point is that the ALJ did not disregard the remainder of Dr. Powell's opinion. The ALJ discussed the remainder of her report, Dr. Powell's report. The ALJ also discussed plaintiff's testimony or Ms. Powell's testimony, excuse me, at hearing. The ALJ repeatedly discussed Ms. Powell's subjective reports to the agency and to her physicians. I disagree with Your Honor's assessment of Ms. Powell's history and whether the record, this is a very short record with very little mental health treatment. There is very little in the record to suggest that she experiences severe limitations mentally. In fact, her later providers said that she was medication seeking and disability seeking, and that provider declined to that Ms. Powell sought. So I disagree with your assessment of the record, and more importantly the ALJ disagreed reasonably with that assessment of the record. The ALJ looked at all the evidence. That's clear from the ALJ decision. There's no question. It's a pretty short opinion. Yeah, I mean, I'm looking at it. What's the support for the ALJ's determination that Ms. Powell's lack of adherence to her medical appointments undermined Dr. Powell's opinion? I can certainly see why that would be directly relevant to Ms. Powell's credibility possibly, but the doctor's credibility? And it's perhaps not the most artfully crafted sentence, but it's reasonable for the ALJ to consider whether Dr. Powell's conclusions are consistent with the evidence. But what's the explanation? I agree with that general statement, but what's the explanation or what can we determine is the ALJ's explanation for that broad statement that doesn't seem to be matching apples to apples? The explanation is that despite this history of very little mental health treatment, she nonetheless ran her household. She took care of her children including a child who was deaf. But that's different than saying her lack of adherence to her medical... That's not the full sentence, Your Honor. That's the first part of the sentence. The second part of the sentence is she was able to continue managing her household and caring for her children. The ALJ had earlier... Again, that seems to be mixing. Again, I can understand the second part of that sentence, but adding in that first part without explanation just seems to be mixing. It may be somewhat confusing, Your Honor, but I think it's reasonably read as despite this lack of treatment, which is clear from the record. There's very little mental health treatment. She nonetheless managed her life, including caring for a deaf child and translating for that child in his school regularly, which certainly undermines Dr. Powell's conclusions that she had such problems in the workplace. Okay. Thank you very much. Thank you. And Mr. Vrana, your time ran out. I'll give you a minute if you have something else to say. Your Honor, I'd be happy to answer questions, but I really have no other comments. All right. Well, in that case, thank you very much. Thanks to both counsel. We'll take the case under advisement.